## Chicago & Alton Railroad Company v. Catherine Dumpser.

60    93
61   212
60    93
161s  190
60    93
75   342

1. RAILROADS — *Excursions — Negligence on Connecting Lines.*—A railroad company selling a ticket over its own and a connecting line, in pursuance of an advertisement for an excursion, to be used on a certain train going and returning on a certain day named, and which connecting line is merely the means of reaching the real terminus of its road,

and to which the entire train, excepting the engine, is transferred, must be held responsible for any negligence during the transfer. whether by the acts or omissions of its own immediate servants or those of the connecting line by which it causes its train to be so transferred.

2. NEGLIGENCE—*Overcrowded Cars.*—It is negligence in a transportation company to allow its conveyances to be so overcrowded as to endanger the safety of those who first obtain the available room, or to permit persons to crowd upon the platforms of the cars, in the vain hope of finding room inside.

3. SAME—*Excursions—Duty to Furnish Cars.*—When excursionists and others who have a right to take a train are in excess of its capacity, it is the duty of the company to provide more cars or to exclude the excess from the platforms of the cars before the train is started. Not to do so is palpable negligence.

4. SAME—*Getting upon Overloaded Trains.*—It is not negligence for a person having a ticket entitling him to a passage upon a certain train only to get upon the platform of the train, when it was so crowded that he could not get in, if he did not know of its condition, or if he had no good reason to infer it, which would be equivalent to a knowledge of its condition.

5. ORDINARY CARE—*Exercise of, by Excursionists.*—A person without much experience as to the danger of standing upon the platform of a railway car, having come to the city upon an excursion train on which he had found room inside the car, having a ticket good to return upon that train only, and having no reason to suppose the crowd would be larger going back, is not to be charged with a want of ordinary care for his personal safety because he did as others were doing, and as ordinary men would probably have done under like circumstances—crowd upon the platform, in attempting to gain admission to the cars.

6. VARIANCES—*Must be Raised in the Court Below.*—A variance between the pleadings and the proofs not raised in the court below can not be raised on appeal.

7. PERSONAL INJURIES—*Occurring in Other States—Right to Sue in Illinois.*—On the trial the plaintiff (the widow of the deceased) put in evidence a statute of Missouri, which authorizes her to bring a suit in that State, and it was admitted that this action was properly brought in her name in this State if the proofs support the declaration.

**Trespass on the Case.**—Death from negligent act. Appeal from the Circuit Court of Logan County; the Hon. CYRUS EPLER, Judge, presiding. Heard in this court at the November term, 1894. Affirmed. Opinion filed June 3, 1895.

## STATEMENT OF THE CASE.

This is an appeal from a judgment for $5,000 in favor of appellee for damages sustained by reason of the death of

C. & A. R. R. Co. v. Dumpser.

her husband, caused, as alleged, by the negligence of appellant.

It appears from the evidence that appellant advertised by means of posters and notices in local newspapers, an excursion over its road from Lincoln and stations south, to St. Louis, for Sunday, July 22, 1894, at very low rates for the round trip. Posters were circulated at Broadwell, where deceased lived and where he took the train, a distance of over 100 miles from St. Louis, reading as follows:

"Sunday, July 22, 1894.

Grand low rate excursion by special train to St. Louis and return *via* the Chicago & Alton; fare for the round trip only $1.50. Among many attractions in St. Louis on Sunday, July 22, 1894, will be a great game of base ball— St. Louis vs. Chicago National League. For further particulars see small bills.

JAMES CHARLTON,
General Passenger Agent.

The small bills, besides giving details as to the amusements, attractions, etc., contained a time table of the special train, showing the time of arrival at all stations, including East St. Louis and St. Louis, also a table of the rates of fare from the various stations for the round trip to St. Louis and return. Tickets good going and returning on that special train only.

Tickets were issued in the following form:

Issued by CHICAGO & ALTON R. R.

|  | CHICAGO & ALTON RAILROAD. |
|---|---|
|  | EAST ST. LOUIS |
| ST. LOUIS | —TO THE— |
| AND | STATION STAMPED ON THE BACK. |
| RETURN. | Good only on Excursion Sunday, |
|  | July 22, 1894. |
|  | VIA C. & A. & T. RAILROAD OF ST. LOUIS. |

Issued by CHICAGO & ALTON R. R.

ST. LOUIS
AND
RETURN.

TERMINAL RAILROAD ASSOCIATION OF
ST. LOUIS.
ST. LOUIS
—TO—
EAST ST. LOUIS.
Good only on Special Train Sunday,
July 22, 1894.
VIA C. & A. & T. R. R. ASSOCIATION OF
ST LOUIS.

Issued by CHICAGO & ALTON R. R.

ST. LOUIS
AND
RETURN.

TERMINAL RAILROAD ASSOCIATION OF
ST. LOUIS.
EAST ST. LOUIS
—TO—
ST. LOUIS.
Good on Special Train Sunday,
July 22, 1894.
VIA C. & A. & T. R. R. ASSOCIATION
OF ST. LOUIS.

Issued by CHICAGO & ALTON R. R.

ST. LOUIS
AND
RETURN.

CHICAGO & ALTON RAILROAD.
—FROM—
STATION STAMPED ON BACK HEREOF
—TO—
EAST ST. LOUIS.
Good only on Special Train Sunday,
July 22, 1894.
VIA C. & A. & T. R. R. ASSOCIATION
OF ST. LOUIS.

The deceased purchased one of these tickets and went on the train to St. Louis.

Persons going on this train were subjected to great discomfort because of the excessive number of passengers, many of whom had to stand in the aisles and on the platform, and some even riding on the tops of the cars. Returning from St. Louis the crowd was not less and perhaps

C. & A. R. R. Co. v. Dumpser.

greater, with no additional cars, and the deceased failing to get inside of the train before it entered the tunnel, was by some means cast to the ground and fatally injured.

It is not known whether he was pushed off or fell because suffocated by the gas or smoke, but there can be no doubt that his death was due primarily to the overcrowded condition of the train. The appellee put in evidence a statute of Missouri which authorizes the widow to bring suit and it is admitted that the action was properly brought in her name if the proof supports the declaration.

E. D. BLINN, attorney for appellant, contended that where a railroad company sells a ticket to a passenger over its own road and extending over the road of a connecting line, the company selling the ticket acts as agent only of the connecting line, and is not responsible for injuries received by the passenger, occasioned by the negligence of the officers of the connecting line. 2 Redfield on Railways, 267; Pennsylvania R. R. Co. v. Connell, 112 Ill. 295; Knight v. Cortland R. R. Co., 56 Me. 235; Hartan v. Eastern R. R. Co., 114 Mass. 44; 2 Wood's Railway Law, 1418; 2 Hutchinson on Carriers, Sec. 578; Beach's Law of Railways, Sec. 1006; 25 Am. and Eng. Ency. of Law, 1085, and notes.

A passenger voluntarily placing himself in a position of danger can not recover where his act was the direct proximate cause of the injury, nor can his widow and heirs recover in case of death from injuries so received. Illinois Central R. R. Co. v. Green, 81 Ill. 24; Chicago & Alton Railway v. Becker, 76 Ill. 31; 2 Redfield on Railways, 224; Chicago & N. W. R. R. Co. v. Sweeney, 52 Ill. 330; Chicago, R. I. & P. R. R. Co. v. Bell, Admr., 70 Ill. 103; Abend v. T. H. & I. R. R. Co., 111 Ill. 209.

BEACH & HODNETT, attorneys for appellee, contended that carriers are liable for injuries to passengers on roads over which their trains are run. Wabash, St. Louis & Pacific Ry. Co. v. Peyton, 106 Ill. 534; Chicago & Northwestern Ry. Co. v. Johnson, 27 Ill. App. 351; Morris v. Chicago,

Rock Island & Pacific Railway Company, 65 Iowa, 727; 54 Am. Rep. 39; Knight v. West Jersey Railroad Company, 108 Pa. St. 250; 56 Am. Rep. 200; Herrick v. Minneapolis & St. Louis Railway Company, 31 Minn. 11; 47 Am. Rep. 47; Burns v. Grand Rapids & I. Railroad Company (Ind.), 15 N. E. Rep. 230. The right to sue is given by the Missouri statute to the widow. Revised statutes of Missouri, Section 4425. And person entitled to sue there must sue here. Tiffany on Death by Wrongful Act, Sec. 201, and cases cited; Wooden v. Western N. Y. & P. Railroad Company, 126 N. Y. 10; 26 N. E. Rep., 1050; Usher v. West Jersey Railway Company, 126 Pa. St. Rep. 206.

The relation of passenger and carrier existing in this case, and the railroad company having knowledge of the demand for passage, was bound to exercise the utmost care and diligence reasonably practicable for the safety of the passenger. Chicago & Alton Railroad Company v. Pillsbury, 123 Ill. 9; Tuller et al. v. Talbott, 23 Ill. 357; Chicago, B. & Q. Railroad Company v. Hazzard, 26 Ill. 373; Chicago & Alton Railroad Company v. Arnol, 144 Ill. 261; Chicago & Alton Railroad Company v. Byram, 48 Ill. App. 41.

Suit can be maintained in this State upon the statute of the State of Missouri, such statute not being contrary to the public policy of this State. Revised Statutes of Missouri, Secs. 4425, 4426; Shedd et al. v. Moran, 10 Ill. App. 618; Chicago & Northwestern Railway Company v. Tuite, 44 Ill. App. 535.

MR. PRESIDING JUSTICE WALL DELIVERED THE OPINION OF THE COURT.

The most important question is whether the appellant company can be held responsible for the alleged negligence of running the train so overcrowded through the tunnel. It is argued that deceased had no contract with appellant to carry him beyond East St. Louis, which was the end of its line, and that the negligence alleged was that of the connecting line, known as the Terminal Association, which hauled the train from East St. Louis across the bridge over the

Mississippi river, and through the tunnel to the Union depot in St. Louis; and that appellant acted merely as the agent of said association in selling tickets over that part of the route. A large part of the proof offered by appellant was for the purpose of showing the method by which the transfer of trains is effected, from which it appears that the Terminal Association hauls the train across with its own engine and that it puts its own collector aboard to take up the bridge tickets. The movement of the train is under the exclusive control of the Terminal Association (not only with respect to this road, but all other roads using the bridge), and passengers may be transported across the river who have not come in and who are not going out over the road, so that in crossing the river and passing through the tunnel the train may be crowded by persons for whose presence the road is not responsible.

We have given due consideration to all that is contained in the record bearing on this question and we are clearly of opinion that the position taken by appellant is not tenable. There was a plain and unequivocal proposition to transport persons by a given train from points named on appellant's line to St. Louis and return. This appears from the advertisements, no less than from the ticket. Indeed, while the physical terminus of the road is East St. Louis, the real terminus for all practical purposes as to passenger traffic, was at the Union depot in St. Louis. Its train, in care of its own servants, was taken across by the mere agency of another company, under such conditions as were agreed upon by the two companies, and with which the passengers had nothing whatever to do.

Whatever the appellant allowed the Terminal Company to do in the way of carrying mere bridge passengers in appellant's cars was a matter for which appellant's passengers were not answerable.

Perhaps it is a part of the consideration for which the transfer service is performed, and whether so or not, the appellant permits it, and must be chargeable with the consequences.

We have been referred to the case of Penna. Co. v. Connell, 112 Ill. 295, as supporting appellant in its present contention. In that case a ticket was sold by the Wabash Railroad Company from Omaha to New York. A part of the route was over the line of the Wabash from Omaha to St. Louis, and a part over the line of the Pennsylvania Company from Philadelphia to New York.

The latter company refused to honor the ticket over its line. The Wabash Company, in order to avoid liability for the acts or omissions of connecting lines, printed on the face of the ticket a clause reading thus: "In selling this ticket for passage over other roads this company acts only for them and assumes no responsibility beyond its own line."

The coupon over the Pennsylvania contained a statement that it was issued by the Wabash Railway on account of the Pennsylvania Railroad. Very clearly, in that case, the Wabash was not responsible for the negligence of connecting lines.

The opinion proceeds further to state the general rule that aside from the language of the ticket the selling company would not be liable beyond its own line. We need not combat that position in this case. What might be a sound rule where tickets are sold over connecting lines, the passenger changing cars from one road to another or riding in a through sleeping car furnished by a company operating none of the roads, is not before us. Here the situation is very different. The connecting line, so-called, is merely the means of reaching the real terminus of the road to which the entire train, except the engine, was transferred, and the ticket was in pursuance of advertisements sold for the round trip, to be used only on the specified train going and returning on the day named.

The reasoning of the Supreme Court in the cases of Illinois Central R. R. v. Copeland, 24 Ill. 332, and Wabash, etc., Ry. Co. v. Peyton, 106 Ill. 534, is more in point, as we regard it.

We do not care to enter upon a further discussion of the authorities which have been cited by counsel on either side.

Some of these bear more or less upon the point under consideration, but as frequently happens, the circumstances in others are so unlike those in the case at bar as to make the ruling of little weight here.

Confining our view to the case under consideration we are satisfied that upon reason and authority the appellant must be held responsible for any negligence during the transfer, whether by the act or omissions of its own immediate servants or those of the agency by which it caused its trains to be so transferred.

The next question is, can negligence be inferred from permitting the train to be so crowded that all the passengers could not get within the cars, and taking it in this overcrowded condition through the tunnel?

The answer must be in the affirmative.

It seems hardly necessary to discuss the proposition. A transportation company should not allow its conveyances to be so overloaded as to endanger the safety of those who first obtain the available room.

When that number has been received no more should be admitted, nor should persons be allowed to crowd upon the platform in the vain hope of finding room inside, when to remain on the platform is to incur the danger that was so apparent in this instance. It was the business of those who had the matter in hand to see to the safety of the passengers in this regard.

If the excursionists and others who had a right to take the train were in excess of the capacity of the cars, more cars should have been provided, or the excess should have been excluded from the platforms before the train started. It was, to say the least, palpable negligence, amounting to an apparent indifference, or even disregard, for human life, to move the train into the tunnel while so many passengers were standing on the platforms and struggling for admission to the cars. Without hesitation, this was negligence.

Was the deceased exercising ordinary care in attempting to go on the train in its crowded condition?

His conduct is to be measured by what an ordinary person might reasonably be expected to do under the same cir-

cumstances. He was probably without much experience as to the danger of standing upon the platform while passing through the tunnel. He had a ticket good for that train only. He had managed to find room inside the train coming to the city, and he had no reason to suppose that the crowd would be larger going back. He saw others making their way in or attempting to do so, and there was no interference by the officials in charge of the train.

He did as he saw others doing, without objection from the train men, and he did as ordinary men would probably have done under like conditions.

One of the witnesses, who was also an excursionist, and who had two small boys with him, was prudent enough not to undertake it, and waited for another train, but this action was exceptional and probably due to the extra care naturally taken on account of the boys, whose safety was also involved. We are not disposed to overrule the conclusion of the jury on this point.

Various objections have been urged to the action of the court in giving instructions for appellee, and in modifying and refusing some of those asked by appellant.

In the view we take of the case, the only serious question of fact was that last referred to—whether the deceased exercised ordinary care, and we are of opinion that the conclusion of the jury as to this branch of the case was not unduly affected by the instructions as given.

One of the modifications to which much objection is taken consisted of inserting the words " if he knew " in the body of the third instruction asked by appellant, referring to the knowledge of deceased as to the crowded condition of the car. The instruction, as drawn, charged the deceased with negligence if he got on the car when it was so crowded that he could not get in. If he did not know this condition, or if he had no good reason to infer it, he was not at fault in trying to get in. In the first and second instructions asked by appellant, which were, in a general way, on the same point, and which were given without modification, the element of knowledge was plainly stated.

We think no error occurred in this respect.

Refused instructions complained of were numbers four, five and six, which dealt with the liability of appellant for the negligence occurring during the transfer, as to which, what has herein been said on that point is a sufficient comment and need not be repeated. And so of certain objections based on the same theory of the defense as to some of the instructions given for appellee, wherein it seemed to be ignored whether the point where the deceased fell from the train was on the appellant's line or not.

Further objection to instructions for appellee is that the duty of the carrier, as to the forethought and caution necessary in respect to the safety of the passenger is too strongly stated. Having reference to the facts, we think this objection not well taken. In any fair view of the case, as already stated, we are clear that there was very great negligence in taking the train, so overloaded, into the tunnel, and the jury could not have found otherwise. If, as we hold, appellant is responsible for that negligence, there was nothing left but the question whether deceased used ordinary care, as to which the law was stated with sufficient fullness and accuracy.

A point strongly urged is that the proof does not sustain the declaration in this, that it alleged the appellant possessed and operated a line of railroad from Broadwell to St. Louis, while the proof shows that so much of the line as lies west of Bridge Junction in East St. Louis, is operated and possessed by the Terminal Railroad Association. If there was a variance such as here suggested, between the allegations and the proofs, it should have been specifically pointed out, so that the objections might have been obviated by amendment.

There was a motion at the close of plaintiff's case to exclude the proof from the jury, and we do not understand that it was based upon the ground of variance, but upon the proposition that no liability was shown by the proof. Such an objection can not be urged for the first time in this court.

The judgment will be affirmed.