## Illinois Central R. R. Co. v. Emma A. Treat.

1. RAILROADS—*When the Relation of Carrier and Passenger Commences.*—A person purchased a ticket of a railroad company with the intention of becoming a passenger on one of its trains, and passed through a turnstile provided by the company for that purpose, and onto its depot platform. *Held,* that the relation of carrier and passenger existed between the parties when the purchaser of the ticket passed through the turnstile onto the platform.

2. SAME—*Duty to Passengers on its Premises, and as to the Controlling of Crowds.*—A railroad company is bound to use reasonable care in providing for the safety and protection of its passengers while in its enclosures, and while being conducted to its trains, with due regard to the number and character of those on its premises and with due reference to the risks to which they are exposed; and this duty may require it to provide a suitable number of men to properly control a crowd, and to protect its passengers from the dangers incident thereto.

3. EVIDENCE—*Physician May be Asked as to the Probable Result of an Accident.*—In an action against a railroad company to recover for an injury to the plaintiff occasioned as alleged, by his falling through an opening between a depot platform and a car, the plaintiff asked a medical witness whether such an accident as was alleged to have occurred (describing it) would be likely to result in the condition testified to by him. *Held,* that the question was not objectionable.

4. SAME—*Limiting Number of Witnesses—Intention as to, Declared but Not Executed, Not Error.*—After a number of witnesses had testified upon a particular point, the court stated that only two more witnesses would be heard on such point. Three more witnesses were offered

on such point and they were all allowed to testify.   *Held*, that a claim on appeal that the court improperly limited the number of witnesses on such point was not tenable.

5.   DAMAGES—*$10,000 Held Not Excessive in a Personal Injury Case.*— In a personal injury suit the evidence showed that the plaintiff (a woman) was healthy; and capable of doing all ordinary household work before the accident, and that after the accident her eyes were affected, her range of vision contracted, the action of her heart irregular and impaired, that she suffered from nervous prostration, and that her condition was permanent.   *Held*, that a judgment for $10,000 could not be held to be excessive.

6.   PRACTICE—*Instructions to Disregard the Counts of a Declaration.* —Instructions directing the jury to disregard several counts of a declaration, held properly refused.

7.   NEGLIGENCE—*Pleadings and Proofs as to.*—In a personal injury suit against a railroad company one of the counts of the declaration charged that the defendant carelessly constructed, operated and maintained a platform and left an open space of the width of ten inches between a passenger train and such platform, and that the plaintiff fell through said open space and was injured.   The defendant requested an instruction that if the evidence showed that such space did not exceed three or four inches the plaintiff could not recover.   The court refused to give the instruction, but gave one which left to the jury the question whether the platform was or was not properly constructed and the train properly operated.   *Held*, that the action of the trial court furnished no sufficient cause of complaint.


Trespass on the Case, for personal injuries.   Appeal from the Superior Court of Cook County; the Hon. PHILIP STEIN, Judge, presiding. Heard in this court at the October term, 1898.   Affirmed.   Opinion filed April 18, 1898.


JOHN G. DRENNAN, attorney for appellant; JAMES FENTRESS, of counsel.

It is error for the trial court to permit doctors to testify hypothetically as experts that if a person should receive a fall, such as described by appellee, the injuries complained of would likely follow.   Cannon v. People, 141 Ill. 270; Chicago City Ry. Co. v. Smith, 69 Ill. App. 69; City of Chicago v. McGiven, 78 Ill. 347.

. The defendant is not liable for personal injuries caused by a passenger stepping through an ordinary space between the car and the platform.   Fox v. Mayor, 70 Hun, 181.

A space of eleven inches between the platform and the

car is not negligence, and as a matter of law the court should so instruct. Lafflin v. Buffalo & S. W. R. R. Co., 106 N. Y. 136.

The court will say, as a matter of law, that a space of eight inches between the platform and the car is not negligence, and one being injured by reason of stepping through can not recover, and the court should instruct the jury in such case to find for the defendant. Ryan v. Manhattan Ry. Co., 121 N. Y. 126.

The defendant is only required to exercise reasonable care at its depot platforms and in the loading of passengers, and is not liable if by a sudden rush of persons on its platform, some intended passenger is injured. Ray on Negligence of Imposed Duties, 94-7; Taylor v. Pennsylvania Co., 50 Fed. Rep. 755; Kelly v. Manhattan Ry. Co., 112 N. Y. 443.

Material descriptive matter must be proven as charged by the passenger. Wabash W. Ry. Co. v. Friedman, 146 Ill. 583; Wisconsin C. R. R. Co. v. Wieczorek, 151 Ill. 579; Baltimore & O. R. R. Co. v. Stanley, 158 Ill. 396.

Negligence is a breach of duty which one owes to another. Chicago, R. I. & P. Ry. Co. v. Eininger, 114 Ill. 79.

The mere averment that one party owes the other certain duties or that certain things constitute negligence, does not make such acts negligence or a breach of duty, and even if evidence is given in support thereof, unless some duty imposed by law has been violated which the defendant owed to the plaintiff the question should not be submitted to the jury. Ward v. Chicago & N. W. Ry. Co., 61 Ill. App. 530.

The court will take notice, as a part of the general knowledge of the business affairs of life, of the manner in which railroad business is conducted. Smith v. Potter, 2 A. & E. R. R. Cases, 140; Slater v. Jewett, 5 A. & E. R. R. Cases, 515.

In a case that is close on the facts or where the sympathy of the jury is likely to be on one side, it is important that the instructions, or the modifications thereof, should be technically correct; if not, it is the duty of the court to set aside the verdict or, on appeal, to reverse. Chicago C. Ry.

Co. v. Canevin, 72 Ill. App. 81; Village of Warren v. Wright, 3 Ill. App. 610; Chicago & A. R. R. Co. v. Murray, 62 Ill. 329; Baldwin v. Killian, 63 Ill. 550; Illinois C. R. R. Co. v. Maffit, 67 Ill. 431; Chicago, B. & Q. R. R. Co. v. Payne, 49 Ill. 499; Chicago, B. & Q. R. R. Co. v. Griffin, 68 Ill. 499.

A railroad company is not required to provide a guard for each passenger or bound absolutely to protect persons from the negligence of other persons on its platform, but is only bound to use reasonable care in that respect. Taylor v. Pennsylvania Co., 50 Fed. Rep. 755.

Unless a railroad company is guilty of negligence it is not liable to a passenger for an injury received even when in transit. Chicago C. Ry. Co. v. Dinsmore, 162 Ill. 658.

A railroad company "can not be expected to treat its passengers as children, or to put them under restraint. Passengers must take the responsibility of informing themselves of the every-day incidents of railway traveling, and the company could not do business on any other basis." Mitchell v. Chicago & G. T. Ry. Co., 12 Am. & Eng. R. R. Cases, 163.

ASHCRAFT & GORDON, attorneys for appellee.

It was the duty of the defendant to maintain on the platform sufficient employes to protect the appellee from injury by the pushing and crowding of other passengers. Taylor v. Pennsylvania Co., 50 Fed. 755; Chicago & A. R. R. Co. v. Dumpser, 60 Ill. App. 93; Chicago & A. R. R. Co. v. Pillsbury, 123 Ill. 9; Lucy v. Chicago Gt. Western Ry. Co., 31 L. R. A. 551; Gaynor v. Old Colony & Newport Ry. Co., 100 Mass. 208; Railroad Co. v. Aspell, 23 Pa. St. 147; Warren v. Fitchburg R. R. Co., 8 Allen, 227; Wright v. Chicago, B. & Q. R. R. Co., 35 Pac. Rep. 196; Pittsburg, Ft. W. & C. Ry. Co. v. Hinds, 53 Pa. St. 512; Flint v. Norwich & N. Y. T. Co., 34 Conn. 554; Britton v. Atlanta & C. A.-L. Ry. Co., 88 N. C. 536; King v. Ohio & M. Ry. Co., 24 Fed. Rep. 335; Hutchinson on Carriers, Sec. 595, 596; 2 A. & Eng. Ency. of Law, 764, 765, Note 1; Evansville & I. R. R. Co. v. Darting, 33 N. E. Rep. 636; Louisville & N. R. R. Co. v. Kelly, 92

Ind. 371; 2 Wood's Railway Law, 1177; Chicago, B. & Q. R. R. Co. v. Mehlsack, 131 Ill. 61; Goddard v. Grand Trunk Ry. Co., 57 Me. 202.

MR. PRESIDING JUSTICE ADAMS DELIVERED THE OPINION OF THE COURT.

This is an appeal from a judgment rendered in favor of appellee and against appellant for the sum of $10,000, in an action on the case for damages alleged to have been occasioned by appellant's negligence. The original declaration contains four counts. The first count avers that appellant negligently constructed and maintained its passenger platform at its Van Buren street depot in the city of Chicago, in such manner as to leave a space of, to wit, ten inches, between said platform and its passenger train, and that appellee, who had purchased a passenger ticket for the purpose of riding on one of appellant's trains from said depot, while approaching appellant's train with due care, etc., on said platform, fell through said open space and was injured etc.

The second count is substantially the same as the first, except that it avers as negligence that said open space was left unguarded and unprotected.

The third count is substantially as follows:

That defendant operated a railroad as stated in the former counts; that on the day aforesaid and six months prior thereto the defendant, by means of divers and numerous bills and posters displayed by the defendant in divers, numerous and public places in the city of Chicago and elsewhere, and divers numerous advertisements published in the city of Chicago and circulated among the people generally throughout the State and elsewhere, had been soliciting unusually large numbers of persons to travel upon and over the defendant's said railroad as passengers. Avers that on the 22d day of October, 1893, she procured from the defendant a ticket commonly called a passenger ticket, and the plaintiff paid the defendant for the same, which entitled plaintiff to safe access to one of defendant's said passenger

trains, and carriage thereon as a passenger, from the defendant's Van Buren street passenger depot to the defendant's 60th street passenger depot; that the defendant was in possession of and using a platform in connection with and as a part of the defendant's said Van Buren street depot and railroad and passenger trains, for use by persons desiring to become passengers on defendant's said passenger trains.

Avers that on said day after having purchased said ticket from the defendant, she proceeded with all due care and diligence upon her part to and upon said passenger platform for the purpose of becoming a passenger for carriage thereon by the defendant as a common carrier. "That by reason of the defendant's said bills, posters, notices, advertisements and solicitations aforesaid, there had congregated at the defendant's said depot and passenger platform on the day last aforesaid, when the plaintiff was on said platform for the purpose aforesaid, an unusually and extraordinarily large number of persons, to wit, 10,000 persons, for the purpose of being carried as passengers by the defendant," on defendant's trains from said platform. Avers that it was the duty of the defendant to place at said Van Buren street depot a sufficient number of defendant's officers, agents, employes, servants and police, to protect, control and direct the movements of said large number of persons and to furnish plaintiff an opportunity to safely gain access to the passenger trains of the defendant; but the defendant did not regard its duty or use due care in that behalf, but on the contrary thereof the defendant "carelessly and negligently failed to place at said Van Buren street passenger depot and on said platform a sufficient number of defendant's officers, agents, employes, servants and police or other persons to properly control and direct the movements of said large number of persons, and to furnish plaintiff an opportunity of safely gaining access to and becoming a passenger upon said defendant's said passenger trains; and when the plaintiff, with all due care and caution on her part, was then and there about to pass from said passenger platform to said

passenger train to be carried as a passenger by the defendant as aforesaid, the defendant carelessly and negligently permitted said large number of persons to suddenly rush, surge, crowd, push and move toward the defendant's said passenger train with great force and violence; and plaintiff avers that thereby and by reason thereof the plaintiff was then and there thrown, pushed and crowded with great force and violence to, upon and against said passenger platform and said passenger train there, by means whereof" her head, neck, back, spine, hips, legs, etc., were then and there bruised, broken, mashed, etc., and thereby by reason thereof the plaintiff, suffered, etc., and laid out a large sum of money, to wit, $1,000.

The fourth count contains substantially the same averments as the third, and, in addition thereto, contains averments that it was the duty of appellant to so construct, locate and maintain the platform, and so move, place and operate its trains with reference to the platform, as to protect appellee and furnish her with a safe access to the train, but that appellant so negligently constructed and maintained the platform and operated its train as to leave an open space of the width of, to wit, ten inches, unprotected and unguarded between the platform and trains; that appellee did not know of said unguarded space, and was pushed by the crowd (as in third count alleged) with great force and violence to and upon the platform and against the train, and into and through said open space, etc.

After verdict and before judgment, appellee, by leave of court, filed the following amendments to her declaration, appellant's original plea to stand as a plea to the declaration as amended:

"Now comes Emma A. Treat, the plaintiff, by Ashcraft, Gordon & Cox, her attorneys, and by leave of court first had and obtained in the premises, amends her declaration herein and each count thereof as follows:

"1st.  By inserting in the first count of said declaration immediately after the words 'From the defendant's said Van Buren street passenger depot to, to wit, the defendant's 60th street passenger depot, in said city of Chi-

cago, county and State aforesaid, for a certain reward then and there paid by,' the words, 'Leonora Starritt for.'

"2d.   By inserting in the second count of said declaration immediately after the words, 'And the plaintiff at, to wit, the defendant's said Van Buren street passenger depot, on the day last aforesaid, purchased from the defendant for a valuable consideration then and there paid by,' the words, 'Leonora Starritt for.'

"3d.   By inserting in the third count of said declaration after the words, 'And plaintiff avers that on said 23d day of October, 1893, she procured from the defendant a ticket commonly called a passenger ticket, for a reward then and there paid by,' the words, 'Leonora Starritt for.'

"4th.   By inserting in the fourth count of said declaration immediately after the words, 'And plaintiff avers that on the 23d day of October, 1893, she procured from the defendant a ticket, commonly called a passenger ticket, for a valuable consideration then and there paid by,' the words, 'Leonora Starritt for.'"

·The date of the accident was October 23, 1893, while the World's Fair was in progress. The approach to the Van Buren street station and the surroundings were as follows : Michigan avenue is a north and south street, and appellant's right of way and tracks are east of and parallel with Michigan avenue and between the avenue and Lake Michigan. Access to appellant's tracks was by means of a viaduct commencing at the east line of Michigan avenue, which rose gradually to a height of from twenty-two to twenty-five feet. Persons passed along a passage-way, on the viaduct to the east, till they reached a stairway about twenty-four feet in width, thence down the stairway to a level with the platform, hereafter mentioned. Between the foot of the stairway and the turnstile, through which all passengers passed to the platform, there was a space of about 200 feet. In this space there were four ticket offices, where those desiring to take the train purchased tickets, and then passed through the turnstile onto the platform. The platform was eighteen feet wide by 600 feet long. There were employes of appellant at the foot of the viaduct at Michigan avenue,

officers at the head of the stairs above mentioned, between the foot of the stairs and the turnstile, and at the turnstile, to give information to the people and direct their movements. It was stipulated that for several months prior to May 1, 1893, and down to and including October 23, 1893, appellant did an unusual amount of advertising in all the principal newspapers published in the city of Chicago, among which was the Inter Ocean, Times-Herald, Journal, Record, Staats Zeitung and News, advertising the facilities of appellant to haul people to and from the World's Fair at Jackson Park; that said newspapers were circulated generally throughout the city of Chicago, the State of Illinois, the northwest, and to a certain extent throughout the east; that appellant also posted up in all its depots along its lines of railway large posters and handbills advertising its facilities, as aforesaid, and soliciting the patronage of people desiring to visit the World's Fair, and that appellant had two men at the approach to the viaduct, which led to its special World's Fair trains at Van Buren street, crying out and giving directions to such people as were there. The appellant made very extensive preparations and arrangements for carrying people to and from the World's Fair, expending therefor over two millions of dollars; it had 300 special cars constructed for that purpose, and its facilities were such that it could start a train of eight cars from the city to the World's Fair each minute and a half. The parties stipulated as follows:

"For the purpose of this trial it is admitted that during the month of May, 1893, the Illinois Central Railroad Company carried from its Van Buren street station to the World's Fair ground stations................. 381,336 passengers.

| | | |
|---|---:|:---|
| In June, 1893............ | 608,220 | " |
| July, 1893........... | 594,744 | " |
| August, 1893........ | 647,882 | " |
| September, 1893...... | 812,886 | " |
| October, 1893........ | 1,256,389 | " |
| Total............ | 4,301,457 | " |

"All on the World's Fair special trains.

" That they carried on the World's Fair trains from Van Buren street to the World's Fair stations on October 23, 1893, the day of the accident, 42,985 passengers."

We will first consider the evidence in relation to the first and second counts of the declaration.

Emma N. Treat, appellee, testified that she went to appellant's Van Buren street station on Monday, October 23, 1893, in company with her sisters, Mrs. Leonora Starritt, and Mrs. Elizabeth Bailey; that Leonora Starritt purchased three tickets at the ticket office between the foot of the stairway heretofore described and the turnstile, and gave appellee one, when, after dropping their tickets into the slot, they passed through the turnstile onto the platform; that there was a train standing at the platform, but seeing that there was a large crowd there rushing toward the train, they did not attempt to board that train, as it was fast filling up, but waited, perhaps not as long as three minutes, for the next train; that when the next train pulled in they started for about the middle car of the train, appellee's sisters being ahead of her; that as they started, the crowd behind appellee surged against her and crowded her up against the car, and the next she knew, she was down as far as her arms between the platform and the car. The witness then goes on to describe the injuries which she received, which evidence will be referred to hereafter. Appellee's sisters, Mrs. Starritt and Mrs. Bailey, who were ahead of appellee as they approached the train, and who boarded a car immediately before the accident, both testified that after boarding the car they looked around for appellee and saw that she had fallen between the car and the platform, her head and shoulders being just above the platform.

Edward Callahan, a former employe of appellant, testified that October 23, 1893, he was in appellant's employ; that his place of duty was on the platform in question; that he saw the accident; that appellee got one foot in the space between the platform and car and fell over, but that her leg did not go down in the space mentioned further than the ankle; that she did not fall in the space up to her

waist. The platform was on a level with the floor of the car, and was four feet one and three-quarter inches above the top of the rail.

Thirteen witnesses testified to the distance between the body of a car standing in front of the platform and the edge of the platform, some of them testifying from actual measurement, and none of them stated the distance to be in excess of five inches. The cars were open ones, and the entrances were at the side of the cars between the seats, and there was a contrivance attached to each car, by means of which a bar could be thrown across each space where entrance was made, when the car was loaded, and removed when it was desired to unload. These bars were all placed across the entrance of each car or removed at the same time, part of the contrivance to do which was an iron rod running along the side and about two and a half inches from the body of the car and from one to two inches below the surface of the platform. The rod was one inch wide by one-quarter inch thick, its edge being upward. If the space between the body of the car and the edge of the platform was only five inches, and the iron rod intervened, as stated, there would be only about two and a half inches between the rod and the platform. The evidence is that the cars used for the transportation of people to the World's Fair were all of the same dimensions, and that the track where the cars stood when the accident occurred, was the track where they stood when the several witnesses estimated the distance between the cars and the platform. We think the evidence that the space between the body of the cars and the platform did not exceed five inches, and that the space between the iron rod and the platform did not exceed two and a half inches, greatly preponderates. Three witnesses, however, having testified that appellee fell up to her arms into the space, the question as to whether she so fell was one for the jury to determine.

The next question is whether the evidence is sufficient to sustain a recovery on the third count, which charges insufficient protection to appellee while on the platform and

approaching the waiting train. One hundred and forty-eight car trains left the Van Buren street depot for the World's Fair, October 23, 1893, between 7 o'clock A. M. and 10:30 o'clock P. M., carrying 42,999 people. Between 8:20 o'clock A. M. and 12 o'clock noon, sixty-four trains left, a train leaving every four minutes on an average. Each train of eight cars could seat 640 people.

With regard to the number of people on the platform at and about the time of the accident, the witnessess testified as follows:

Appellee—400 or 500; more than a trainload. Mrs. Starritt—300, may be 400. Mrs. Bailey—A large crowd. Mrs. Starritt says she was so crowded that she had to protect herself by putting up her hands against the jambs of the door, and Mrs. Bailey, that the crowd crushed her right into the doorway.

· Willard E. Robertson: Have seen the platform two-thirds covered with people, pushing and endeavoring to get in. T. O. Johnson testified to substantially the same. John R. Robertson says the crowd was worse than the average crowd, because they were anxious to get to the fair. Alice Carson and Alice M. Town testified to the same effect. Gallery, one of appellant's special officers at the time of the fair, called as a witness by appellant, was examined and answered as follows:

Q. "Well, how big a crowd usually congregated there before you could get them away?" A. "Oh, quite a crowd."

Q. "About how many?" A. "Sometimes, I should think, over a thousand people."

Q. "Sir?" A. "From 500 to 1,000, sometimes."

Dennehan, a police officer stationed at the depot, called by appellant, testified as follows:

Q. "What has been the extent of your experience in controlling crowds of people congregating together at platforms and places of amusement?" A. "Well, sir, I have got a good deal of experience; I have had experience down there that I would not want to have again."

Cleveland, witness for appellant, testified that he had seen from 300 to 400 people on the platform at one time. The evidence as to the number of officers or guards on the platform is, in substance, as follows:

Appellee: Saw only one man, who was standing near turnstile and urging the crowd forward. Mrs. Starritt: Saw no policeman or any one in uniform; saw a man saying "pass south;" saw no one but this man directing the crowd. Mrs. Bailey: Heard no one say anything to the crowd; saw no one in uniform. John R. Robertson: Usually went to the fair between nine and ten o'clock A. M. Don't remember seeing any one on platform in uniform, or any one outside the crowd except the man who threw back the lever. Higgins, one of appellant's superintendents, testified that in the neighborhood of two dozen officers were kept on duty at the Van Buren street station to control the crowd, but this witness evidently testified from his general knowledge as superintendent. He said that O'Keefe, hereinafter mentioned, employed and had charge of the police officers. The following named persons testified to the number of officers on the platform, as follows: Theobald, Gallery and Callahan, eight; Keane and Hartford, six; Cleveland, five or six at a time; Dennehan, seven or eight; O'Keefe, twelve. It would appear from O'Keefe's testimony, that five of these twelve were at the turnstiles through which access was gained to the platform. Harding, six to fifteen. It was clearly a question to be determined by the jury from all the evidence, whether appellant furnished a suitable number of policemen or guards to keep the crowd under reasonable control, direct its movements toward the train, and protect passengers from injury by reason of the violent or unruly conduct of the crowd.

Appellee having procured a ticket and placed herself within the care of appellant, with the *bona fide* intention of becoming a passenger on one of its trains, the relation of carrier and passenger existed between the parties when appellee passed through the turnstile onto the platform. Warren v. Fitchburg R. R. Co., 8 Allen, 227; Allender v.

Chicago, R. I. & P. R. R. Co., 37 Ia. 264, 270; Webster v. Fitchburg R. R. Co., 161 Mass. 298; Spannagle v. Chicago & A. R. R. Co., 31 Ill. App. 460; Hutchinson on Carriers (2d Ed.), Sec. 557; Elliott on Railroads, Vol. 4, Sec. 1579, and cases cited in note 2, top page 2460.

In Taylor v. Pennsylvania Co., 50 Fed. Rep. 755, the court, in stating the facts of the case, on motion for a new trial, says : " The depot was under the control of the defendant company, and the plaintiff when injured was a passenger going to the train which was operated by the defendant, and destined for Niles, Ohio, where she resided. She had purchased an excursion ticket on that day, good for one trip from Niles to Pittsburgh and return, and with a large number of people had visited the latter city on the occasion of the Allegheny bi-centennial celebration. The defendant company and other railroads entering in Pittsburgh had extensively advertised this celebration, and each of them had industriously solicited people to attend. It continued for three days, and the testimony shows that during each of these days a greater number of passengers had been received and discharged from the Union depot than ever before. The plaintiff was one of the unprecedented crowd." The plaintiff, while approaching the gateway leading to the train, was forced and jammed by the crowd against an iron railing and severely injured. The court, in its instructions to the jury, after stating that the defendant railroad was bound to use reasonable care for the protection of its passengers, said : " This reasonable and ordinary care depends largely upon the circumstances of each particular case, and is such care as a person of reasonable and ordinary prudence and skill would usually exercise under the same or similar circumstances. Now apply this rule to this case. The defendant was bound to use such reasonable care as above indicated, in providing for the safety and protection of its passengers while in its enclosures and while being conducted to its trains, with due regard to the numbers and character of those on its premises, and with due reference to the risks and dangers to which they were exposed. It was bound to

provide a suitable number from its own officers and employes, or from the city police furnished, to assist it in properly controlling said crowd, and protecting men, women and children in it from violence because of the unruly character of any members thereof. But it was not bound to do this to the extent of furnishing a guard of policemen for every passenger, or for every small group of passengers, to protect them from physical injury because of the violence of some of their own number. It was only bound to furnish such suitable number of officers and guards as would insure order, and preserve the peace, and keep the crowd in proper control so as to direct their movements toward the train. Whether such suitable number of officers and guards were furnished in this case, is for you, gentlemen of the jury, to determine from the circumstances as they existed at and about the time of the accident," etc. The court, on motion for a new trial, held that the instructions given to the jury were correct, and we do not understand that counsel for appellant seriously contend otherwise. The court, in its opinion, says: "They" (the people) "were there, however, by defendant's solicitation. It had all the means within its power necessary to keep it advised of the rapid increase in the numbers of passengers coming on every train and from every direction. Its capacities and facilities for hauling crowds were well known, and had been theretofore repeatedly tested. The people who started on their journey from every town and city within reach of Pittsburgh, could not measure the volume of the crowd they were to meet when they reached that city, and could not, therefore, intelligently calculate the risks they were to assume when they became a part thereof, at the depot to which they were all transported. The defendant's passengers were, therefore, not chargeable with knowledge of the dangers incurred by accepting its invitation and its inducements to visit Pittsburgh on this occasion. They had the right to suppose that the precautions to be taken for their safety and protection would be commensurate with the increased dangers confronting them. Of these increased dangers, the defendant

had the first and most trustworthy warning." We have quoted thus largely from the opinion of the case cited, because of the similarity of the facts in that and the present case.

In Chicago & A. R. R. Co. v. Pillsbury,. 123 Ill. 22, the court say : "No doubt in many cases, if the carrier observes ordinary care and diligence to discover and prevent injury to passengers, such as any prudent person would use for his own personal safety, it will be exonerated from liability. In other cases and under other circumstances, it will, no doubt, be the duty of the carrier to exercise the utmost care, skill and diligence to protect the passengers from danger and injury, so far as the same, by the exercise of such care, skill and diligence, could have been reasonably and practically foreseen and anticipated, in time to prevent injury." See also Chicago & A. R. R. Co. v. Dumpser, 60 Ill. App. 93; Gaynor v. Old Colony & N. Ry. Co., 100 Mass. 208; Elliott on Railroads, Vol. 4, Sec. 1591.

Counsel for appellee propounded to Dr. Treat, a physician and surgeon who had examined appellee and had described her condition, the following question :

Q. "Doctor, I will ask you to state to the jury, as a physician, whether or not, if a person should be pushed, crowded against a car in such a way as to permit them to fall between the car and the platform, striking with the fleshy part of the hip upon the edge of the platform, you would expect, as a physician, to find the symptoms and results and effects that you have found in Mrs. Treat since the injury?"
A. "It would be very likely to follow as a natural consequence of such causes."

Similar questions were asked Drs. Church and Brown. To these questions counsel for appellant objected on the expressed ground that whether such a fall as is described in the question would be likely to result in the condition described by the physicians, was not a question for an expert; that the direct evidence as to the manner of the fall could not be reinforced or corroborated in that way. Similar questions were propounded to the medical witnesses in City

of Decatur v. Fisher, 63 Ill. 241, and Louisville, N. A. & C.
Ry. Co. v. Shires, 108 Ill. 627, and exceptions thereto were
overruled.

Appellant's counsel also object that the court erred in
limiting the number of appellant's witnesses. When Edward
Callahan was called as a witness by appellant, he was asked
to state the number of special officers which appellant had
on the platform from October 1st to October 23d, when the
court intimated that there had been a large number of wit-
nesses examined in reference to the subject-matter of the
question, and that there should be a limit, to which counsel
for appellant responded: " I will state that I have only
got now, this gentleman, Mr. O'Keefe, Mr. Harding and
three more, and they are my principal witnesses on that
question.    But this is the man who saw this accident."

Then the court said that Callahan might be examined,
and, on counsel stating that O'Keefe was the chief special
agent, and kept time and names, that O'Keefe might also
be examined.    Appellant's counsel then asked : " Does your
honor mean I shall not put any more on ? "    The court :
" I mean in regard to policemen.    I propose to limit you as
to such witnesses.    There must be a limit, because, other-
wise, you might go on for the rest of the month, and per-
haps until June."    Counsel for appellant then proceeded
with the examination of Callahan as to the number of
policemen on the platform; examined O'Keefe on the same
subject, and afterward called Harding, who was a special
officer on the platform October 23, 1893, and examined him,
and he testified as to the number of special officers on the
platform on that day.    The court having previously limited
counsel to the examination of two witnesses, Callahan and
O'Keefe, in relation to the number of special officers on the
platform, when the court permitted the examination of
Harding on the same subject it departed from the limita-
tion rule previously announced, and the way was open for
appellant's counsel to call other witnesses had they seen fit
so to do, but they called no other witness as to the number
of police officers.    We do not think the exception well
taken.

It is objected that the court erred in admitting evidence in rebuttal of accidents at the depot prior to the accident in question. Appellant inquired of no less than five of its witnesses, Higgins, Newell, Gallery, McCarthy and O'Keefe, whether there had been any accident at the depot other than the one in question, to which some of the witnesses answered that they had heard of none; others, that there was one. Appellant, therefore, is not in a position to complain of appellee's evidence in rebuttal that there were other accidents. Appellant's counsel, in their printed argument, urge, as a circumstance favorable to appellant, that during the six months commencing with May and ending with October, 1893, appellant carried to and from the Van Buren street depot $4,301,457 passengers without an accident. It is urged that the amount awarded as damages is excessive. Counsel have included in the record the briefs and arguments used in the trial court on the motion for a new trial, and, although one of the causes assigned for a new trial is that the damages are excessive, we can not find that this reason for a new trial was urged upon the trial court, in argument, and it is not alluded to in the printed argument of appellant's counsel in this court.

The evidence of appellee's injuries resulting from the accident is very voluminous. The evidence shows that her eyes are affected, her range of vision contracted, the action of her heart irregular and impaired, that she is suffering from neurasthenia, or nervous prostration, and that her condition is permanent. Appellee herself testified that prior to the accident she was healthy and capable of doing all ordinary household work, but that since that time her condition had become such that she can walk but a little way at a time—around a block at the farthest. She was between forty-one and forty-two years of age at the time of the accident. We can not say that the damages are excessive.

Appellant asked and the court refused the following instruction:

" The court instructs the jury that under the second count

of the declaration the plaintiff charges that the defendant was operating a depot at Van Buren street for the purpose of receiving passengers on its trains, and that the plaintiff purchased a ticket from said Van Buren street station to Sixtieth street, in the city of Chicago; and plaintiff further avers that the defendant carelessly and negligently constructed, maintained and operated a passenger platform and its passenger trains so as to leave an open space of great width, to wit, of the width of ten inches between said passenger platform and the passenger trains; and avers that as the plaintiff, while in the exercise of due care and caution for her own safety, was about to get on one of defendant's passenger trains, that by reason of the alleged negligence and carelessness of the defendant in leaving the open space aforesaid unprotected and unguarded, she fell with great force and violence through said open space, thereby injuring her.   As to such count of the declaration, the court instructs the jury that if the evidence shows that the space between said train and said platform did not exceed three or four inches, the plaintiff can not recover under such count, even though she was injured while in the exercise of due care and caution for her own safety."

A similar instruction was asked by appellant as to the first count, and was refused.   The court, however, gave, by appellant's request, the following instruction:

" The court instructs the jury that the defendant was not bound, under the law, to so construct its stations and car platforms as to make accident to passengers using the same, impossible, or to use the highest degree of diligence to make them safe, convenient and useful; but the law is, that the defendant was only bound to use ordinary care and diligence, in view of the dangers attending their use, to make them reasonably adequate for the purposes for which they were intended; and in this case, if evidence shows that the defendant exercised ordinary care and diligence in the construction of its platform, the handling of its cars thereat, and the control and handling of the crowd, your verdict should be for the defendant, even though the

plaintiff was in the exercise of due care and diligence for her own safety at the time she received the injury complained of."

This instruction left to the jury the whole question as to whether the platform was, or not, properly constructed, and appellant's cars properly operated, and we do not think the refusal of the instructions above mentioned reversible error.

Appellant also asked, and the court refused to give, the following instruction: "The court instructs the jury to disregard the first count of the declaration," and also a like instruction as to each of the other three counts. These instructions were, in our opinion, properly refused. Chicago, R. I. & P. Ry. Co. v. Clough, 134 Ill. 593.

Appellant asked the court to give thirty instructions, fifteen of which, some of them with modifications, were given. We think the jury was fully and fairly instructed, and find no reversible error in the modification, giving or refusal of any instruction.

The judgment will be affirmed.