## The Illinois Central Railroad Company

*v.*

## Emma A. Treat.

*Opinion filed February 17, 1899—Rehearing denied June 19, 1899.*

1. APPEALS AND ERRORS—*Supreme Court will not set verdict aside as against weight of evidence.* The Supreme Court cannot invade the province of the trial and Appellate Courts by setting aside a verdict at law as against the weight of the evidence.

2. PLEADING—*defective statement of cause of action is cured by verdict.* A defective statement of a cause of action not tested by demurrer is cured by verdict.

3. CARRIERS—*when relation of carrier and passenger exists.* One who has purchased a ticket, passed through a turn-stile where the ticket is deposited, entered a platform provided exclusively for passengers and is about to enter the train is a passenger, and the carrier must use a high degree of care to prevent injury while the passenger is attempting to get on board.

4. EVIDENCE—*when evidence of medical experts is properly admitted.* Though the questions put to medical experts might have been more aptly framed, the court may permit them to give answers to the effect that the injuries which they had found upon the plaintiff might have been received in the manner described as the cause.

5. SAME—*when proof of other accidents at same place is competent in rebuttal.* In an action by a passenger injured by falling between the platform and the car on attempting to enter the train, it is proper for plaintiff to prove by a witness that the latter had met with an accident at the same place prior to plaintiff's injury, to rebut defendant's evidence that it had carried a very large number of passengers from that place without accident.

6. TRIAL—*improper remarks by counsel before jury—when not ground for reversal.* A judgment will not be reversed because of an offer by plaintiff's counsel, in the presence of the jury, to prove that the plaintiff's witness had been injured in the same manner as the plaintiff, and at the same place, where the offer is refused by the court and the jury instructed to disregard it.

CARTWRIGHT, C. J., and BOGGS and PHILLIPS, JJ., dissenting.

*Illinois Central Railroad Co. v. Treat,* 75 Ill. App. 327, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. PHILIP STEIN, Judge, presiding.

John G. Drennan, and C. V. Gwin, (James Fentress, of counsel,) for appellant.

Ashcraft & Gordon, for appellee.

Mr. Chief Justice Carter delivered the opinion of the court:

Emma A. Treat, the appellee, recovered a judgment against appellant on account of a personal injury received by her on October 23, 1893, while attempting to board one of appellant's trains at its VanBuren street station, in Chicago, for the World's Fair, at Jackson Park. The Appellate Court has affirmed that judgment. Appellant had erected a viaduct over its tracks at this station, with stairways, one for ingress and the other for egress of passengers. After purchasing tickets, passengers passed through turn-stiles, where they deposited their tickets, to a platform erected by the company, and from which they entered the cars through open doorways in the sides of these cars. There were eight of these doorways in each side of the car, and their thresholds were level with the platform. The negligence charged in the first two counts of the declaration was, in substance, that the defendant, in constructing the platform, negligently left an open space of great width, to-wit, of the width of ten inches, between the platform and the train when standing at the platform, and that the plaintiff, while using due care, fell through this open space and was injured. The third count alleged that in order to attract custom the defendant advertised extensively throughout the country its facilities for transporting persons from the city of Chicago to the World's Fair grounds, and thereby caused a large crowd of people to assemble upon this platform and from thence to enter the defendant's cars, and that it was the duty of defendant to provide a sufficient number of its agents, employees or police to control and direct the movements of such crowd and to protect the

plaintiff and to furnish her an opportunity to safely enter the defendant's cars, but that the defendant failed in such duty, and that while the plaintiff was upon such platform for the purpose of entering one of the defendant's cars, and when about to enter such car, the defendant, not having there a sufficient number of employees or police, negligently permitted such crowd to rush, surge, move and push towards said cars and the plaintiff, and that she was thereby thrown, pushed and crowded upon and against said platform and the car of the defendant, and was thereby injured. The fourth count combines the substance of the other three, and alleges that the plaintiff was crowded and pushed against the car and into the open space before mentioned, between the car and the platform. The evidence tended to prove that there were from five hundred to eight hundred people upon the platform when the train came up; that the train would carry six hundred and forty; and the testimony of the plaintiff and her two sisters, who were with her, was, that when they were about to enter one of the cars the crowd surged and pushed against them, pushing two of them into the car but pushing the plaintiff against the car and into the open space between the car and the platform, and that she fell into such open space to her arm-pits and received the injury complained of. The plaintiff received an injury to her spine, and suffered, and at the time of the trial (more than three years after the accident) was still suffering in an increased degree, from nervous prostration. The extent of her injuries was not controverted on the trial, and the evidence showed them to be permanent.

The first contention of appellant is that the trial court erred in refusing to instruct the jury to find the defendant not guilty. We have carefully examined the evidence and find that this error is not well assigned. True, the testimony offered by appellant tended with great force to prove that when the train was at the platform the space between the platform and the entrance side of the cars

did not exceed five inches, and that this space was about equally divided by an iron bar or rod running the full length of the car between it and the platform, and that it was impossible for plaintiff to fall into this open space as she testified, and that it would have been unsafe for appellant's trains to run closer to the platform.    Three witnesses, however, as before stated, testified that she did so fall between the platform and the car, and that the space was much wider than the width shown by appellant's evidence to be necessary for the safe running of its trains.    Viewed as a question of law, there was also sufficient evidence to sustain the third and fourth counts. We cannot invade the province of the trial and Appellate Courts and set aside the verdict on the ground that it is against the weight of the evidence.    The relation of carrier and passenger existed between appellant and appellee.  She had procured her ticket, passed through the turn-stiles provided by appellant, had there delivered her ticket to appellant and had entered upon the platform constructed by appellant exclusively for passengers, and was about to enter appellant's car when she was injured.  Appellant was therefore bound to exercise a high degree of care to avoid injuring the appellee, its passenger.   (4 Elliott on Railroads, secs. 1579, 1589.)   The declaration alleged, and the fact has been finally established as alleged, that the injury was caused by the negligence of the company while appellee was using due care for her own safety.    Unless errors of law in the rulings of the trial court contributed to the verdict we cannot interfere.

It is contended that the third and fourth counts are not sufficient, in law, upon which to base a judgment against appellant.  We cannot agree to this view.  The sufficiency of these counts was not tested on demurrer, and even if they were defective in stating a cause of action, their defects were cured by the verdict.  A case similar in many respects will be found in *Taylor* v. *Pennsylvania Co.* 50 Fed. Rep. 756.

We do not think it was error, as contended by appellant, for the court to permit expert witnesses—medical experts—to testify that the plaintiff might have received the injuries which they found, on examination, she suffered from, by the fall which she described. While the questions to them might have been more aptly framed, the substance of the answers was that the injurious effects upon her body which they found, were consistent with the alleged injury received by the fall as a cause, and which were described.

It is further alleged that the court erred in permitting appellee to prove in rebuttal, by Genevieve Kingsbury, that she had met with an accident at the same place when attempting to enter upon appellant's train on October 9, 1893, before the happening of the accident to appellee. Appellant had, in its defense, undertaken to show that it had carried a very large number of passengers to the fair from this depot without accident, and had inquired of different witnesses whether or not any accidents had occurred or come to their notice, and this testimony was therefore proper in rebuttal. The court permitted nothing more to be proved than that the witness met with an accident there. Nor can we reverse the judgment because the court permitted counsel for the plaintiff to make the offer, in the presence of the jury, to prove by the witness Kingsbury that she fell into the open space between the car and the platform. The offer was refused and the jury instructed to disregard it.

Some imperfections in the instructions are pointed out, but we find no substantial error in them. Taken as a series they state the law correctly. In lieu of some refused as offered by the defendant, others were given covering the same ground. Out of thirty asked by the defendant fifteen were given, covering every proper phase of the defense.

The judgment must be affirmed.

*Judgment affirmed.*

Mr. Justice Boggs, dissenting:

In my opinion this judgment should be reversed. It is undeniable an open space of some width must be left between the edge of the platform and the car. The appellee did not produce any proof, by way of measurements taken or by estimates, as to the width of such open space, nor any proof tending to show the platform could have been so constructed as to extend nearer to the cars than it did without interfering with the operation of the trains. The appellant company, on the contrary, introduced proof which disclosed in detail, from actual measurements, the location of the track and the platform, the width of each, the width of the cars, the respective levels of the floor of the cars and the platform, and also the manner of the construction of the platform and of the cars, from which testimony it appeared the body of the cars extended to within five inches of the edge of the platform, and that two and one-half inches of that space was closed by an iron rod attached to the sheathing of each car at the bottom and extending toward the platform two and one-half inches and running the full length of the cars, and that the floors of the cars were on a level with the floor of the platform. This testimony seemed to admit of no other conclusion than that the platform extended as far in the direction of the track of the railroad and as near to the body of the cars as was compatible with the practical operation of the trains and the safety of passengers, and, standing by itself, fully refuted the allegation of the declaration that the company had so negligently constructed the platform as to leave an "open space of great and dangerous width" between it and the cars. The appellee and her sister testified appellee's lower limbs and a portion of her body passed between the car and the platform, and this alone is relied upon to sustain the charge that the company so negligently constructed the platform as to leave a greater space than was necessary to be left between the cars and the platform. The testi-

mony of other witnesses tended to show that when appellee fell her body remained upon the platform, and did not, nor did any part of her body, pass between the car and the platform. The testimony that a portion of the body of appellee entered the space between the car and the platform could not be otherwise regarded than as in direct conflict with the proof the space was only of the width of two and one-half inches, and it is claimed it tended to show such open space was larger than was necessary to permit the trains to be moved in safety, and therefore tended to prove the company was negligent in the matter of constructing the platform. If this view of the tendencies of such testimony be accepted, it is clear, to say the most that can be said in aid of an affirmance of the judgment, that the testimony on the point was so conflicting and so nearly evenly balanced that it was indispensable nothing should intervene which might improperly prejudice or move the jury upon the point. That any part of appellee's body passed between the edge of the platform and the car was not only denied by eye-witnesses, but would seem to be wholly irreconcilable with the undisputed proof as to the actual width of the open space between the car and the platform. This was a crucial point, and it seems to the writer an erroneous ruling of the court permitted counsel for appellee, in his capacity as counsel and not under oath as a witness, to state alleged facts in the presence and hearing of the jury to the prejudice of the appellant upon that issue of fact.

Appellant, in its defense, had undertaken to show that while the fair was in progress a very large number of passengers had entered its cars with safety, from the platform. In rebuttal, appellee introduced Genevieve Kingsbury, who testified she met with an accident at the platform when going to the fair. Counsel for appellee insisted the witness should be allowed to state the details of such accident, but the court correctly ruled the details were not proper. Counsel for appellee desired to

state what testimony the witness would give as to the details of the accident, in order to enable the court to judge as to the admissibility thereof. Counsel for appellant strenuously insisted the statement should not be made in the presence of the jury, but the court declined to remove the jury and permitted counsel for appellee to make the following statement in their presence and hearing: "We offer to prove by the witness that on Chicago day, October 9, 1893, at this loading platform, and on the same platform the plaintiff was injured on, this witness was caught in a crowd and fell through between the car and the platform,—that is, the larger part of her body." This statement was well calculated to influence the jury upon the material question whether the space between the car and the platform was sufficiently large to admit the body of a person. It will be remembered the appellee relied upon the testimony of herself and her sisters that a portion of her body entered the space between the car and the platform, to establish that the appellant negligently left a greater opening than was necessary and safe. This testimony was re-enforced by this statement of her counsel that he could prove, and would prove if allowed to do so, that the person of the witness Kingsbury passed through the opening between the car and the platform. It is conceded in the majority opinion it would have been error to have permitted the witness to testify as to the facts stated by counsel. Can any one say the statement of counsel was less effective in its influence upon the jury than if it had been testified to by the witness who was there present and ready, as counsel stated, to testify to it? The margin of evidence is too narrow and the balance too delicate to warrant this court in indulging the supposition the statement had no prejudicial effect.

Speaking of the effect of such statements, the Supreme Court of Michigan, in *Scripps* v. *Reilly*, 38 Mich. 10, said: "The character of the offer so made may be such,

even although they were rejected below, as to require, on error, a reversal of the judgment, where the party making such rejected offer obtains a verdict and judgment in the case. Everything having a tendency to prejudice or influence a jury in their deliberations, which is not legally admissible in evidence on the trial of the cause, should be, so far as possible, kept from coming to their knowledge during the trial. An impression once made upon the mind of a juror, no matter how, will have more or less influence upon him when he retires to deliberate upon the verdict to be given, and no matter how honest or conscientious he may be, or how carefully he may have been instructed by the court to not permit such incompetent matter to influence him or to have any bearing in the case, it will be difficult, if not impossible, for him to separate the competent from the incompetent, or to say to what extent his impressions or convictions may be attributed to that which properly should not have been permitted to come to his knowledge. But whatever the reason for the rule may be, all courts agree in excluding incompetent testimony, and that an error in this respect will be sufficient cause for reversal. This rule would be but slight protection if counsel or witnesses could be permitted to make a statement, but not under oath, of the incompetent testimony, or counsel state the same fully to the jury in their argument, or otherwise. The essence of the wrong consists in the fact that such incompetent testimony is brought to the attention of the jury, more than in the method adopted in communicating the fact. No matter how the information is derived, the result is the same."

In *State* v. *Moore*, 104 N. C. 744, it was assigned as for error the court caused the jury to be removed out of the hearing of the court in order counsel might state the answer he expected to elicit by a question to a witness which had been ruled improper, and the Supreme Court of that State said: "It might be that the question would

elicit incompetent evidence if allowed, and that the mere statement of it, as proposed, in the presence of the jury, might make, or tend more or less strongly to make, a false or improper impression on the minds of the jurors, or some of them. It is the province of the court to prevent such possible evil when it can properly, and thus help to secure a fair and impartial trial."

In *Birmingham Nat. Bank* v. *Bradley*, 108 Ala. 205, the court remarked: "Wrong and injurious impressions intentionally made upon the minds of the jurors, by asking improper questions or making an improper argument to the court in their presence, for the purpose of getting before them facts or statements not admissible and which have been ruled out, calculated to prejudice their judgment, demands the prompt interference of the court, and a judgment should not be allowed to stand obtained by such a practice."

It may, at times, appear necessary to counsel a statement should be made in order to enable the court to decide whether the alleged facts stated are competent to be made known to the jury. All authorities agree if the statement is as to alleged facts likely to influence the jury the proper practice is either to withdraw the jury from the presence and hearing of the court and counsel until the statement can be made and heard by the court, or to require counsel to reduce the statement to writing and hand it to the court for the information of the court, and thus incorporate it in the record. In the case at bar the alleged facts stated by counsel bore directly upon a pivotal point of fact in issue so closely contested that the slightest circumstance might turn the scale in favor of either party. Surely the motion of appellant that the jury should be withdrawn ought to have been granted.

The remaining charge of negligence was that preferred in the third and fourth counts, that the appellant company had reason to expect upon the platform, at the time in question, the presence of a large number of persons

who desired to be transported upon its trains, and that the appellee was injured in attempting to pass from the platform into the train by reason of the failure of the appellant company to employ a sufficient number of officers, agents, employees, etc., to protect, control and direct the movements of the large number of persons so on the platform, and to furnish the appellee an opportunity to safely gain access to the train. Issues of fact therefore arose under the third and fourth counts, which it was the province and duty of the jury to determine. To authorize a verdict for the plaintiff on either of these counts it was essential it should appear from the testimony, among other things, that the plaintiff exercised due or ordinary care for her own safety, and that the appellant company was negligent in the matter of furnishing a reasonable number of officers and employees to direct and control the movements of the crowd of persons on the platform.

It seems to the writer undeniable the court erred in ruling upon a point affecting the alleged failure of the company to provide and have upon the said platform the requisite number of officers, guards or agents charged with the duty of endeavoring to control and direct the movements of the persons composing the crowd upon the platform, in order that such persons should not be injured by the action of others while upon the platform waiting for the train or when endeavoring to gain access to the cars. For the purpose of meeting and defending against this charge of negligence the appellant company introduced one Edward Callahan, and propounded to him the following question: "Now, say during the month of October,—commencing about the 1st of October down to the 23d,—tell the jury how many special officers the Illinois Central had on that loading platform," whereupon the court remarked: "One moment, if you please. There ought to be a limit to this, I think. The plaintiff has had her inning on this subject. You have put upon the stand a

large number of witnesses in regard to this specific fact."
The reply of counsel, and the colloquy between court and
counsel, and the remarks of the court in passing upon the
question, were as follows:

Mr. Drennan: "I will state that I have only got now,
this gentleman, Mr. O'Keefe, Mr. Harding and three
more, and they are my principal witnesses on that ques-
tion. But this is the man who saw this accident.

The court: "I mean regarding the number of police
there. I think there has been enough testimony upon
that point. You may ask this gentleman.

Mr. Drennan: "Mr. O'Keefe, the chief special agent,
kept their time and names.

The court: "You may ask him also, but let that be
the limit.

Mr. Drennan: "After this one?

The court: "Yes.

Mr. Drennan: "Does your honor mean I shall not put
any more on?

The court: "I mean in regard to policemen. I propose
to limit you as to such witnesses. There must be a limit,
because otherwise you might go on for the rest of the
month and perhaps until June." (To which ruling of the
court defendant then and there excepted.)

Under this ruling of the court at least three witnesses
whose testimony the appellant company desired to pro-
duce were excluded from the witness stand. This, I think,
was error. When a fact is not controverted, or when the
witnesses are called for the purpose of expressing opin-
ions as experts, power rests in the court, acting within
reasonable limits, to make orders limiting the number
of witnesses to be produced. When testimony has been
heard establishing *prima facie* a fact which the opposite
party concedes to be true, the court may refuse to per-
mit the time of the court to be consumed in hearing fur-
ther testimony upon the point. When a point is to be
determined from the opinions of expert witnesses, econ-

omy of the time of the court may justify an order, made prior to the beginning of the trial, fixing the number of expert witnesses each party may produce, or, possibly, in the absence of a prior order, a reasonable restriction of the number of expert witnesses may be made and the action of the court upheld, unless it appears to have been prejudicial to one or the other of the parties. But here the testimony of the witnesses the appellant desired to produce was directed to the elucidation of a bitterly contested and controlling point of fact in the case. Speaking as to the rule here involved, we said in *Union Nat. Bank* v. *Baldenwick*, 45 Ill. 375: "If the fact is not controverted, it is no doubt in the discretion of the court to limit the number of witnesses to prove it, but when the truth of the fact is contested it is otherwise." And in *Green* v. *Phœnix Mutual Life Ins. Co.* 134 Ill. 310, we cited with approval the following quotation from Wharton on Evidence: "A trial might be mischievously delayed if a party were permitted to call all the witnesses he chooses to prove any one particular relevant point, and, consequently, when such point appears to the court to be satisfactorily established, the further calling of witnesses to prove it may be stopped, subject, however, to the right to recall should the point be subsequently disputed," and declared the rule to be, that "where a particular fact is not controverted, or is conceded, the trial court may rightfully limit the number of witnesses called to establish such fact." It is true, we said in *Gray* v. *St. John*, 35 Ill. 222, "courts have the right to limit the number of witnesses to be examined and the number of depositions to be read to prove a particular fact;" but the expression must be considered in connection with the sentence immediately following it, which is, "when a fact is sufficiently proven, and is not controverted, the court may refuse to suffer its time to be occupied in hearing further evidence on that point." So considered, the rule announced in that case is the same as in the later cases

of *Union Nat. Bank* v. *Baldenwick, supra,* and *Green* v. *Phœnix Mutual Life Ins. Co. supra,* viz., that the number of witnesses may be limited only when a fact is sufficiently proven and is not controverted. In *White* v. *Hermann,* 51 Ill. 243, the trial court refused to permit the appellant to call more than four witnesses to testify to their opinion as to the value of a tract of land. The trial judge seems to have been moved to so limit the number of witnesses for the reason the statute then provided the costs of four witnesses, only, should be taxed against the unsuccessful party unless the court should certify that a greater number was necessary. We ruled the statutory regulation as to costs had no effect to empower the court to limit the number of witnesses, and reversed the judgment because of the error of the court in restricting the number of witnesses desired to be introduced by appellant. In the course of that opinion it was said: "It may be that on a mere collateral question the court may have a discretionary power to limit the number of witnesses who may testify on that particular question. * * * Nor are we prepared to hold, in such a case, that a court has the power, on such a question, to limit the number which may be examined by either party." It is true that in the case of *Lake Shore and Michigan Southern Railroad Co.* v. *Brown,* 123 Ill. 162, the action of the trial court in refusing to allow appellant to introduce an additional witness was held not error; but the exclusion of the witness was justified upon the ground that two other witnesses had both testified in behalf of appellant to the fact, and the fact was nowhere controverted in the record. In the case at bar the point to which the testimony of the excluded witnesses was directed was controverted, and it was the right of appellant to lay before the jury all competent testimony it had which tended to meet and deny the charge it had negligently failed to supply a sufficient number of officers, agents or guards to protect the public upon the platform. The exclusion of witnesses produced

for the purpose of showing the number of persons so employed and so stationed on the platform on the occasion in question was, it seems, clearly wrong, and so prejudicial as to constitute error reversible in character.

Furthermore, it is clear the evidence tended to show the injury to appellee was occasioned, in part, at least, by her own imprudence, amounting to a lack of ordinary care for her own safety, and that the instructions of the court as to the effect of such contributory negligence were prejudicially erroneous. The appellee testified that when she came upon the platform a great crowd of persons were there and a train was standing on the track at the platform, which was soon filled with passengers and moved away from the platform on its way to the fair grounds, leaving, in her opinion, more than enough persons standing upon the platform to fill the next train; that as the train moved out the crowd of people in front of her moved back, and that she and her sisters took advantage of this and stepped forward "as nearly as they could," until there were only a few persons still in front of them and a great many people on the platform back behind them; that they got as near the front as they could; that more persons were coming upon the platform; that another train came in three or four minutes; that she and her two sisters started for about the middle of the car, her sisters being ahead of her; that as they moved forward the crowd suddenly rushed and surged against them and pushed her against the upright part of the car between the openings or doors; that it was all done suddenly, and she was pushed and held against the car, and the next thing she knew she was down between the platform and the car; that some one whom she did not recognize assisted her to arise and helped her into the car and placed her in a vacant seat next to her sister, who had preceded her into the car.

The evidence tended strongly to show the appellee and her sisters voluntarily became part of a surging and

pushing crowd of people who were endeavoring to reach and secure seats in the train, and that she and her sisters secured positions in advance of some of the others in the crowd and entered voluntarily into a struggle with others about them to secure seats in the cars and that in the struggle the appellee was pressed against the side of the car between the openings that served the purpose of doors, and in that manner received such injuries as were inflicted upon her. Her right of recovery is based upon actionable—not willful—negligence of the appellant company. Therefore, whether her conduct on the occasion in question was governed by the dictates of ordinary care, or whether a lack of reasonable prudence and caution on her part contributed to her injury, was a material question of fact. If she recklessly rushed into danger which, by ordinary care, she could have avoided, no rule of law or justice can be invoked to compensate her for any injury which such lack of reasonable care contributed to produce. (*Chicago and Alton Railroad Co.* v. *Gretzner*, 46 Ill. 75; *Chicago and Alton Railroad Co.* v. *Becker*, 76 id. 25; 4 Am. & Eng. Ency. of Law, 18, 19, 20, and notes.) The facts presented by the evidence as to the propriety of her conduct, and its effect upon her right to recover damages for her alleged injury, demanded the exercise of the sound judgment and discrimination of the jury, aided by instructions of the court accurately stating the rules of law applicable to her right and to the liability of the defendant company.

Counsel for the appellant, by instruction No. 10, asked the court to advise the jury that unless it appeared from the testimony that the appellee was, at the time in question, in the exercise of ordinary care and caution for her own safety the verdict should be for the defendant. The instruction, it cannot be denied, should have been given, but the court modified the instruction as follows: "and if she did not exercise such care and caution, *and by reason thereof* received the injury complained of," then the ver-

dict should be for the defendant. The vice of this modification is, it would be fairly understood by the jury to declare that though they should believe the appellee failed to use ordinary care for her safety, yet unless they further believed she received the injury solely because of her imprudence she might lawfully recover. This ignores entirely the well established rule that if a want of ordinary care upon her part contributed to produce the injury she could not recover. The doctrine of comparative negligence no longer obtains in this jurisdiction, and the rule is firmly settled that if an injury results from the mere negligence of the defendant, combined with a want of ordinary care on the part of the plaintiff, the law will not allow compensation. The error of this instruction was repeated in instruction No. 3 asked by the appellant company, which related also to other questions, and which, so far as it referred to the effect of negligence of the plaintiff upon her right of recovery, was modified by the court so as to read as follows: "If the plaintiff has failed to prove, by a preponderance of the testimony, that the defendant was guilty of such negligence, *or that she exercised such ordinary care and caution as above set forth, and if the evidence shows that the plaintiff received the injury complained of by reason of her failure, if she did fail, to exercise such care and caution,* then, in either of these two cases and contingencies, your verdict should find the defendant not guilty." Here, again, the direction is that a failure on the part of the plaintiff to exercise ordinary care would not bar recovery, unless the evidence further showed her injury was the result of her failure to exercise the requisite degree of care. If the jury believed the injury occurred by reason of the combined influence of negligence on the part of appellant and the lack of ordinary care on the part of appellee they would reasonably conclude from this instruction, as modified, the legal right of appellee to recover was unaffected by her negligence. This is not the law, and the instructions as modified could

but mislead the jury upon a material point of the case, to the prejudice of the appellant.

Believing the errors here endeavored to be pointed out operated to prevent a fair and impartial trial, I can not agree the judgment should be affirmed, but am of the opinion it should be reversed and the cause re-heard by another jury.

CARTWRIGHT, C. J., and PHILLIPS, J.: We concur in the dissenting opinion of Mr. JUSTICE BOGGS.