## Fidelity & Casualty Company of New York v. Emma B. Morrison.

### Gen. No. 4,635.

1. INSURANCE—*what is "accident" within meaning of accident insurance policy.* An injury or death resulting from violent means is an accident notwithstanding it may have been caused or contributed to by the carelessness of the person injured or killed; such injury or death is an accident unless it appears to have been intentionally brought about.

2. INSURANCE—*when company estopped from denying that death resulted from accidental means.* An insurance company is estopped from contending that the death of the insured did not result from accidental means where, by direct statements made in open court and by various motions and proceedings in the cause, it admitted that it was liable for the face of the policy, namely, $5,000, but denied only its liability for an additional $5,000 provided to be paid under the terms of the policy where death resulted to the insured from accidental means while he was riding upon a public conveyance propelled by steam.

3. INSURANCE—*when insured "riding" upon public conveyance propelled by steam.* In determining whether the insured at the time of his death was riding upon a public conveyance propelled by steam, the essential question is to determine whether he became a passenger upon such train, and the insured, if he had become such passenger, came within the terms of the policy if his death resulted while seeking to board such train.

4. LIABILITY—*effect of admission of, by counsel.* An admission by counsel of a specific liability excludes the necessity of proof to establish the liability so admitted.

Action of assumpsit. Appeal from the Circuit Court of DeKalb county; the Hon. LINUS C. RUTH, Judge, presiding. Heard in this court at the April term, 1906. Affirmed. Opinion filed November 9, 1906.

O. W. DYNES and FRANK M. COX, for appellant.

ELA, GROVER & GRAVES, for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

The Fidelity & Casualty Company of New York

issued to Gilbert W. Morrison, of Chicago, a policy of accident insurance wherein his sister, Emma B. Morrison, was named as beneficiary. So far as material to this case the policy insured Morrison "against disability or death resulting directly and independently of all other causes from bodily injuries sustained through external, violent and accidental means." Under the head "Accident Payments" it insured him in the sum of $5,000 and provided among other things: "If death shall result within ninety days from said injuries the company will pay the beneficiary hereinafter named, if surviving, five thousand dollars." Under the heading "Double Indemnities" it provided: "Or if said bodily injuries so received by the assured while riding on a passenger elevator; or as a passenger in or on a public conveyance propelled by steam, compressed air, electricity or cable, and provided by a common carrier for passenger service; * * * or if death shall so result within ninety days from said injuries (received as defined by this paragraph) the company will pay the beneficiary hereinafter named ten thousand dollars." The statement attached to the policy gave the business of Morrison as "office, traveling and estimating." During the period covered by said policy and on the evening of December 26, 1904, Morrison started from his residence in Chicago upon a journey to a place in Ohio. He went to the Sixty-third street station of the Illinois Central Railroad, intending to there take a suburban train and go north to the general station of the Illinois Central Railroad at Twelfth street, and there take a train to Ohio. He arrived at the Sixty-third street station about 8:30 P. M. It had been raining and was foggy or misty. The ticket station for suburban passengers is just south of the sidewalk on the street, and the railroad is there elevated above the street. The station is not accessible to the general public. There are two turnstiles

through which persons can pass, one which turns outward and permits persons within the station access to the street, and the other which permits intending passengers to enter the station grounds. This is directly at the ticket seller's window. Morrison applied for and purchased a ticket from that point to the Twelfth street depot. He inquired of the ticket agent for his train, was told it was due or about due, passed through the turnstile in front of the agent, and passed rapidly up the steps which led to the platform for through trains. Through trains are provided with steps by which passengers ascend and descend from the cars. The suburban platform is elevated still above that, and Morrison passed up the steps to the suburban platform. The suburban cars had no steps, but their platform was on a level with the platform of the suburban station. The car platform extended out from the car eleven inches, and to within some four inches of the station platform. There was on each side of this extension platform of the car a hand railing three feet and five inches high which extended out one inch less than the car platform. There was an electric arc light upon the platform and other small lights. The station platform was very long. Morrison came up on the north end of the station platform. There was a hand railing between the stairs upon which he so traveled to the suburban station platform and the train, which terminated in a post six feet and eight inches south of the north end of the station platform and thirteen inches from its outer edge. The facts so far stated are substantially undisputed. When Morrison arrived upon the station platform he was running and carrying a satchel weighing twenty-five or thirty pounds. The train he wished to take had arrived and discharged its passengers and had commenced moving, and Morrison attempted to get upon it. At the point where he started to get upon it

he was, according to some of the witnesses, eighteen
to twenty-five feet, and according to others, only five
or ten feet, south of the iron post referred to.   The
evidence is conflicting as to what then happened.
There was testimony tending to show that the train
had then moved about the length of one car.   There
was evidence that it was going twelve or fifteen miles
per hour.   When the conductor, after Morrison had
been hurt, pulled the bell to stop the train, the con-
ductor was of opinion the car was then running twelve
miles per hour.   There was evidence from which the
jury might find that Morrison attempted to board the
car eighteen to twenty-five feet south of this post, and
that it had not then attained the speed of twelve
miles per hour.   The car was provided on each side
with iron gates which when closed prevented any one
from getting upon the car.   The iron gates on the op-
posite side of the car were closed.   Those on the side
next the platform were open, and the evidence seems
to show that they were kept open during the entire
trip towards the city.   There is evidence to show that
Morrison took hold of the front railing of the front
platform of a car and placed one foot upon the plat-
form of the car, and other evidence tending to show
that he got hold of the railing of the car and ran along
by the side of the car without getting his foot upon
it.   When he reached the iron post his body or his
satchel struck the post and he was thrown off the train
to the platform, between the post and the car, and af-
terwards the projecting car platform at the rear of
that car struck him and knocked him under the stair
railing and down the stairway.   Immediately there
was an outcry, and the train was stopped after pro-
ceeding less than a car length further.   Morrison was
taken in an ambulance to a hospital, and died next day
from the injuries so received.   Emma B. Morrison,
the beneficiary, brought this suit upon the policy to
recover the double indemnity specified therein, and
filed an appropriate declaration, to which defendant

pleaded the general issue. There was a jury trial. Plaintiff had a verdict and a judgment for $10,405.52, the $405.52 being interest. The insurance company prosecutes this appeal, and contends that the death of Morrison was not caused by accidental means within the meaning of this policy, and that said injuries were not received by him while he was riding as a passenger on said train.

If the question whether Morrison's death was the result of accidental means within the meaning of this policy, is presented for decision upon this record, there is much authority for answering the question in the affirmative. 'The only ground for arguing that his death was not due to accidental means is the claim that the evidence shows Morrison was negligent in attempting to board the car while in motion. In Mutual Accident Association v. Barry, 131 U. S. 100, the policy there in suit insured against death from bodily injuries effected through external, violent and accidental means, and the insured jumped from a platform to the ground beneath, and received such injuries that he died nine days later. One question was whether his death was accidental. The court said: "It must be presumed, not only that the deceased intended to alight safely, but thought that he would. The jury were, on all the evidence, at liberty to say that it was an accident that he did not." In Schneider v. Provident Life Ins. Co., 24 Wis. 28, the court said: "A very large proportion of those events which are universally called accidents happen through some carelessness of the party injured which contributes to produce them. Thus, men are injured by the careless use of firearms, of explosive substances, and machinery, the careless management of horses, and in a thousand ways where it can readily be seen afterward that a little greater care on their part would have prevented it. Yet such injuries, having been unexpected, and not caused intentionally or by design, are always called accidents, and properly so. * * *    There

is nothing in the definition of the word that excludes the negligence of the injured party as one of the elements contributing to produce the result. An accident is defined as 'an event that takes place without one's foresight or expectation; an event which proceeds from an unknown cause, or is an unusual effect of a known cause, and therefore not expected.'" In Provident Life Ins. & Inv. Co. v. Martin, 32 Md. 310, it is said: "Nor is it a good defense that the accident was caused by the mere carelessness or negligence of the assured. * * * Here the liability is created by contract, one of the chief objects of which was to protect the assured against his own mere carelessness or negligence. * * * The terms of the exception," (wilfully exposing himself to any unnecessary danger or peril) "show that all accidents resulting from mere carelessness or negligence are insured against. The observance of due care and diligence on the part of the assured is no element of the contract on his part, and can in no way affect the right of action thereon." In Freeman v. Travelers' Ins. Co., 144 Mass. 572, it is said: "By the use of the word 'accidental,' injuries to which the negligence of Murray contributed are not excluded from the protection of the policy." 1 Am. & Eng. Ency., 2nd ed., 291, defines "accident" in such a policy as "the happening of an event without the aid and design of a person, and which is unforeseen." And on page 294 it is said: "The definition does not exclude an injury caused in part by the negligence of the assured." In 2 May on Insurance, 4th ed., sec. 526-7, pp. 1244-1250, speaking of a case where the policy insured against any accident while traveling by public or private conveyance, the author says: "No doubt all the parts of a train of cars constitute the conveyance, and unless the insured is restricted by the terms of the contract to some particular part, it would seem that whoever holds a ticket may recover, without reference to the particular part of the convey-

ance he may have been on at the time of the accident. If he be anywhere on the conveyance—even though negligently, yet without misconduct or fraud,—at the time of the accident, he is within the terms of the contract." In 4 Cooley's Briefs on Insurance, 3156, it is said: "An effort which is not the natural or probable consequence of the means which produce it, an effect which does not ordinarily follow, and cannot be reasonably anticipated from the use of such means, an effect which the actor did not intend to produce, and which he cannot be charged with the design of producing, is produced by accidental means." Healey v. Mutual Accident Association, 133 Ill. 556; Travelers' Ins. Co. v. Ayers, 217 Ill. 390; Central Accident Ins. Co. v. Rembe, 220 Ill. 151; Western Commercial Travelers' Association v. Smith, 40 L. R. A. 658; Fidelity & Casualty Co. v. Johnson, 30 L. R. A. 206, and note in which the cases are collected, in most of which the general rule seems to be maintained that an event which takes place without the foresight or expectation of the person affected thereby is an accident, within the meaning of such a policy, and that it is none the less an accident because of the negligence of the person insured. There is no proof which would warrant a finding that Morrison intended to commit suicide, or expected to be thrown from the train. There is nothing to show that he knew that the post and stair railing were near enough to the train so that he was in danger of striking them. The fair intendment from his conduct is that the event was entirely unforeseen and unexpected by him. It was, therefore, the result of accidental means, within the foregoing authorities.

But appellee contends that upon this record appellant is estopped from claiming that Morrison did not meet his death by accidental means. At the trial Mr. Grover was of counsel for appellee and Mr. Cox for appellant, and soon after the introduction of proofs began the following colloquy took place:

"The Court: As I understand it there is no controversy here except as to whether the plaintiff is entitled to recover $5,000 or $10,000.

"Mr. Grover: And legal interest thereon from the date the proofs of loss were made.

"Mr. Cox: Well, we don't want to admit that, but we contend that the plaintiff is not entitled to $10,000.

"The Court: I don't want any misunderstanding; that is correct, is it? The real question we are trying is whether the plaintiff is entitled to $5,000 or $10,000, with interest?

"Mr. Cox: That is correct."

This admitted every fact required to establish a liability for $5,000 under the single indemnity clause of the policy, and appellee was not required to offer any proof to establish such liability. This admission was repeated in many ways during the trial. At the close of appellee's evidence in chief appellant's attorney moved the court to instruct the jury to find the issues for the plaintiff and assess the plaintiff's damages at $5,000 with interest, and submitted a lengthy written motion to that effect and a written instruction directing the jury to find the issues for the plaintiff and to assess the plaintiff's damages at the sum of $5,000 with interest thereon at the rate of 5 per cent. per annum from the second day of February, 1905, which instruction was refused. Again, at the close of all the evidence, appellant's attorney presented a like written motion together with a like written instruction, and requested the court to give it to the jury, which was refused. Appellant requested and the court gave the jury its instruction number 5 to the effect that if the jury found from the evidence that Morrison attempted to board said train when moving twelve to fifteen miles per hour, and while in the act of attempting to board it was struck by said post and thereby thrown to the station platform and thereby received the injuries complained of, then the

jury should find the issues for the plaintiff, and assess the plaintiff's damages at the sum of $5,000 only, with interest thereon from the second day of February, 1905. Appellant requested and the court gave its instruction number 7, which told the jury that if they believed from the evidence certain things set out in the instruction, then as a matter of law, under the policy sued on, Morrison was not a passenger in or on said car, and the jury should find the issues for the plaintiff and assess the plaintiff's damages at $5,000 only with interest, etc. Appellant requested and the court gave its instruction number 13 which, after telling the jury what plaintiff was required to prove in order to recover double indemnity, concluded as follows: "And if, after considering all the evidence, you believe plaintiff has failed to make such proof, then you should find the issues for the defendant as to said double indemnity or sum of money in excess of said $5,000 and interest, and as to said single indemnity you should find the issues for the plaintiff and assess the damages at $5,000 and interest thereon." Appellant's instruction number 14 was given and conceded a liability for $5,000 and interest. Appellant requested and the court refused various instructions, among which its instruction number 3, if given would have directed a verdict for plaintiff for $5,000 and interest, and also its instruction number 4, which contained among other things this language: "As to the first insurance against death the amount of insurance is $5,000, and as to this amount the defendant makes no defense, but admits its liability for that amount with interest." Appellant's refused instructions numbered 6, 8, 9, 15, 16, 17, 18, 19, and 20, each required the jury to find for the plaintiff in the sum of $5,000 and interest. Appellant also assigns for error in this court the failure of the court to give its instructions aforesaid, requested at the close of appellee's proofs and at the close of all the proofs, to find for the plaintiff in

the sum of $5,000 with interest. Appellant therefore conceded to the fullest extent its liability under the single liability clause of the policy. It, however, contends here that this concession has no bearing upon the proof necessary to establish a case against it for the double indemnity. This position we think untenable. To entitle appellee to recover the $5,000 it was necessary to establish that the death resulted, directly and independently of all other causes, from bodily injuries sustained through external, violent and accidental means. Appellant cannot be heard to say that the injuries causing Morrison's death were sustained through accidental means as to the $5,000 clause and not sustained through accidental means as to the double indemnity. The accidental means referred to in connection with the single liability are the same accidental means referred to in the provision for double indemnity. The clause about death by accidental means is set out in the policy before the provision for either single or double indemnity, and it is not repeated. After this concession at the trial, and after the position so taken and persisted in by appellant, it cannot now be heard to say that the death of Morrison was not caused by bodily injuries sustained through external, violent and accidental means. It must be regarded as conclusively established for all the purposes of the present hearing in this court, that the death resulted from bodily injuries sustained through external, violent and accidental means, within the full meaning of those words, as used in this policy. This disposes of every question of fact in the case except the question whether Morrison received said injuries while a passenger in or on a public conveyance propelled by steam, provided by a common carrier for passenger service. This train was propelled by steam provided by a common carrier for passenger service, and the only question of fact remaining is whether Morrison was a passenger in or on that car.

The concession so made by appellant upon the trial also disposes of many errors alleged. As Morrison ran up the steps to the station platform, Kelly, a passenger just leaving the platform, called out to him urging him not to attempt to get upon the train. The court refused to admit the words which Kelly said. This evidence could only have been competent as tending to show negligence in Morrison if he heard Kelly, as to which there is no proof. But as the question of Morrison's negligence was immaterial, and it had been conceded that his death was due to accidental means, these expressions by Kelly were not competent. They had no bearing on the question whether Morrison, when afterwards injured, was riding as a passenger on the train. The court refused to admit proof of a statement made by Morrison while in the ambulance on the way to the hospital to the effect that it was foolish for him to try to get upon the train. This proof was also immaterial, after the admission made by appellant. The failure to refer to accidental means in appellee's given instructions was for the same reason proper, and many of appellant's refused instructions were properly refused, because they still sought to submit to the jury the question whether Morrison's death was due to injuries caused by accidental means, so far as that bore upon the liability for double indemnity.

Was Morrison riding as a passenger in or on this train at the time he was hurt? Much stress has been laid by appellant on the word "riding," and its omission from certain instructions given at plaintiff's request is urged as error. The train was in motion, and Morrison was seeking to ride upon it, and if he was on it he was necessarily "riding" on it. The material question is whether he was a passenger on the train. He had started on a journey. He came to the ticket office at the entrance to the railroad grounds there. A turnstile excluded the general public. He applied for a ticket to the 12th street station, and it

was delivered to him and he paid for it. He asked the ticket agent as to his train, and was told it was just due or about due. He passed through the turnstile into the station in the presence of the ticket agent. There was a device by which the ticket agent could control the turnstile and prevent its use, but this was not locked. The agent permitted him to enter in order to become a passenger. He passed up to the platform for local suburban trains. His sole purpose in going there was to become a passenger. When he reached the upper platform the train had just started. The trainmen estimated the speed of the train at the time at from twelve to fifteen miles per hour. There were, however, facts and circumstances shown from which the jury might well conclude its speed was much less at the time Morrison started to get on. Each car was fifty-one feet and ten inches long, from end to end of its platform. The conductor shows that Morrison's attempt to get on was made at the front end of the third car, that Morrison was then fifteen to twenty-five feet south of the north end of the station platform, and that the head car had stopped near the north end of that platform. It follows that if the conductor's estimate was correct the train had only traveled eighty or eighty-five feet when Morrison attempted to get on. Though its speed may have continued to increase till Morrison had been struck twice and had fallen or been thrown down the stairway, yet the engineer testified that after receiving the signal he stopped the train in forty feet, and when he had only run about three car lengths, which would be about one hundred and fifty-five feet. Another witness also testified the car was stopped in forty feet. The jury might well doubt whether this train could start, gain a speed of twelve or fifteen miles per hour, and stop again, all in the space of one hundred and fifty-three feet. One trainman testified that passengers intending to leave the train sometimes wait till the train has

started and their car platform has nearly reached the end of the station platform and then jump off. The fireman, who sat on the east side of the engine as it ran backwards, testified that Morrison attempted to get upon the train in the common way that most people do on a moving train, and that he noticed nothing unusual in Morrison's attempt. These statements by the trainmen indicate a common practice, well known to the men in charge of the train, of passengers getting on and off these suburban trains after the trains have started. Under such known conditions the jury might reasonably conclude that the engineer would not seek to gain speed as rapidly as possible instantly after starting his train, but on the contrary, that he would be likely to run slowly while his train was still opposite the station platform.

Upon considering all the proof in the record we are of opinion that the jury were not required to believe that this train had gained a speed of even twelve miles per hour when Morrison sought to enter it, but on the contrary might have reasonably concluded its speed was much less. Iron gates were provided on each side of these cars. Those next to Morrison were open. It was not the practice to close the gates on the loading side of these local trains; nevertheless the open gates and level car platform with convenient hand railings very close to the station platform presented an apparent invitation to enter. The conductor and a ticket collector and the fireman on that side of the engine each saw Morrison approaching with the plain intention of getting on. It is obvious that they knew he intended to get upon the train. They did not call out to him or try to stop him, but by their silence apparently consented that he might become a passenger. We have considered all of Kelly's testimony as given in full in the record, including the statement which some one else prepared and he signed which was not in harmony with his testimony. That examination convinces us

that his deliberate meaning is that Morrison caught hold of the hand rail of the car and got upon the platform of the car with one foot. If he did so, his other foot could not have remained upon the station platform as the car went on, but must have been uplifted and must have been what another witness referred to when he testified he saw Morrison's feet fly out. If Morrison placed one foot on the car platform, with his hand pulling on the railing, it is a reasonable inference that his weight rested entirely on that foot. His body or the satchel were not far enough upon the car so as to escape the post at the north end of the platform, and one or the other struck it, and he was thrown off between the post and the train, and then hit by the projecting platform at the rear of that car, and thrown under the railing and upon the stairs. There is no proof that he knew of the post and stair railing or knew of its close proximity to the outer edge of the station platform.

When we inquire whether he was a passenger on the train we are not asking whether he could recover damages from the railroad company because of that relation. He may have been guilty of such contributory negligence as to bar him from recovering damages from the railroad company for his injuries, and to bar his administrator after his death. The question here is whether the relation of passenger arose from all the facts stated, and whether he was on the train. In his application for this policy Morrison gave his occupation in part as "traveling," and no strained construction of the meaning of the words "in or on a public conveyance" in this policy should be adopted to make it inoperative, but it should be so construed as to give indemnity against accident to a man whose business called him to travel on trains, if the words reasonably permit, because Morrison sought insurance against accident to him while so traveling,

and these are the words selected by the insurer and not by the insured. Travelers' Ins. Co. v. Dunlap, 160 Ill. 642; Fidelity & Casualty Co. v. Sittig, 181 Ill. 111; Terwilliger v. Masonic Accident Assn., 197 Ill. 9. If Kelly's testimony was true, Morrison was on the car in a very real sense, and the contrary evidence was almost entirely of a negative character, or that the witnesses did not see that Morrison got one foot on the car. In I. C. R. R. Co. v. Treat, 179 Ill. 576, where a person designing to get upon a suburban car of the same railroad at a station not far distant from this was injured, the court said: "The relation of carrier and passenger existed between appellant and appellee. She had procured her ticket, passed through the turnstiles provided by appellant, had delivered her ticket to appellant and had entered upon the platform constructed by appellant exclusively for passengers, and was about to enter appellant's car when she was injured." See also the same case in 75 Ill. App. 327. Fidelity & Casualty Co. v. Sittig, *supra;* Chicago Union Traction Co. v. Rosenthal, 217 Ill. 458. Under the rules of law prevailing in this state we conclude that the jury were warranted in finding that Morrison was a passenger on a moving conveyance propelled by steam, within the meaning of those words in this policy, and that he would have remained upon the train if the post and stair railing had not been so close to the train, or if he had not been impeded by his satchel. It is, therefore, unnecessary to consider decisions in other jurisdictions where a different construction of this and other similar policies has been adopted.

We find no reversible error in the record. The judgment is, therefore, affirmed.

*Affirmed.*